# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF GEORGIA
## SAVANNAH DIVISION

COACH, INC. and COACH SERVICES, INC.,

    Plaintiffs,

v.

HUBERT KELLER, INC., d/b/a/ Keller's Flea Market,

    Defendant.

Case No. CV411-285

# ORDER

In this trademark and copyright infringement case, plaintiffs Coach, Inc. and Coach Services, Inc. (hereafter for convenience, Coach) move to compel Hubert Keller, Inc. (HKI) to produce its tax returns and financial information for 2009-2011. Doc. 40. It also wants to re-depose HKI about its revenues for those years because HKI refused to answer questions about them. *Id.* at 1-2. Finally, it seeks Fed. R. Civ. P. 37 sanctions for its motion and re-deposition expenses.[1] *Id.* at 2. HKI opposes. Docs. 41 & 45.

---

[1] The Rule requires the Court to award reasonable expenses unless the defendants' nondisclosure was substantially justified or other circumstances make an award of expenses unjust. Fed. R. Civ. P. 37(a)(5)(A).

## I. BACKGROUND

Coach sued HKI, a Savannah, Georgia flea market operator, for contributory trademark and vicarious copyright infringement. Doc. 22 (Amended Complaint against HKI and individual defendants); doc. 39 (individual named defendants dropped, but not "John Doe" defendants); doc. 42 (Order affirming that).[2] Coach alleges that "[u]pon information and belief, [HKI], on multiple occasions, willfully and knowingly encouraged and permitted the sale of Infringing Product [(handbags, watches, jewelry, etc.)] to occur at The Flea Market." Doc. 22 at 30 ¶ 70. And, it intends to continue to do so. *Id.* ¶ 74; *see also id.* at 2, 5, 12-21; http://savannahnow.com/stories/031106/3706156.shtml (last visited Dec. 12, 2012) (Savannah Morning News report on criminal counterfeiting; "Five arrests were made at Keller's Flea Market on U.S. 17.").

Coach thus seeks recovery on contributory infringement claims. *Id.* at 21 (Count I); *id.* at 31 (Count II). The trademark and copyright statutes -- 15 U.S.C. § 1117 and 17 U.S.C. § 504 -- authorize recovery of statutory damages or, if one elects, ill-gotten profits. Keeping its options

---

[2] In its latest briefs Coach has omitted the "John Doe" defendants from the caption. Docs. 43 & 46. It thus impliedly moves to dismiss them. The motion is **GRANTED.** The caption above has been amended to reflect that result. The Clerk is therefore **DIRECTED** to amend the docket caption accordingly. All subsequent filings shall conform.

2

open on both forms of damages, Coach thus served HKI with a Fed. R. Civ. P. 34 document request in which it sought "a copy of any electronic data file used in connection with the flea market." Doc. 40-2 at 3; doc. 41-2 at 4. It also requested "a complete copy of the federal tax return of [HKI] for the years 2009 through 2011." Doc. 40-2 at 4.

On July 27, 2012, HKI objected. HKI receives no percentage of vendor sales, only booth-space rental fees, so its main objection is on relevancy grounds: at most its financials will show rental income. Doc. 45 at 9. The document requests thus were, HKI contended, "overly broad, not relevant, and not reasonably calculated to lead to the discovery of admissible evidence in this matter." Doc. 41-2 at 4. HKI also deemed the "electronic data" request "vague." *Id.*

On September 4, 2012 Coach emailed HKI to set up HKI's Fed. R. Civ. P. 30(b)(6) deposition, as well as that of others, including Cheri S. Keller. Doc. 41 at 3; doc. 40-3 at 1 (Coach's Sep. 4, 2012, Rule 30(b)(6) notice to HKI with specified areas of inquiry, including: "(K) Financial information relating to the flea market; and (L) Financial information relating to the sales of merchandise by the tenants known to have sold counterfeit merchandise."). Coach's counsel, Ryan Isenberg, emailed

KHI attorney Benjamin W. Karpf that he intended to interrogate HKI on the very financial information to which HKI objected. He explained his position:

> A trademark infringement plaintiff may elect between statutory damages and profits. The revenues and expenses of infringing parties are both relevant and admissible as to these issues. *See, e.g. Nike Inc. v. Variety Wholesalers, Inc.*, 274 F. Supp. 2d 1352 (S.D. Ga. 2003); *Am. Taxi Dispatch, Inc. v. Am. Metro Taxi & Limo Co.*, 582 F. Supp. 2d 999 (N.D. Ill. 2008). Your client has objected to producing tax returns and financial statements, but they are always related and discoverable in these kinds of cases (I don't need Mr. Keller's personal return or financial statement). I am certainly willing to enter into a protective order allowing them to be designated and treated as confidential, but need these documents in advance of the depositions. If you have any authority to support your objections, I would appreciate your providing that to me.

Doc. 40-4 at 1.

Isenberg also spoke with Karpf prior to the Rule 30(b)(6) deposition. Karpf opined to Isenberg that Coach's authorities did not support the production of HKI's tax returns and general financial information. Doc. 41-3 ¶¶ 4-5. HKI, after all, engaged in no sale of any goods, but merely rented stall space. So even as a contributory infringer, its financials would show no useful information because at best Coach "was entitled to an award of an infringer's profits related to the sale of infringing items." *Id.* ¶ 4.

4

"Isenberg admitted that he had never seen a case addressing the calculation of profits in the secondary infringement context." *Id.* ¶ 5. He promised to check with his clients to see if they had encountered this issue in another one of their trademark infringement cases and that he would get back to Karpf. *Id.* ¶ 5. Karpf likewise promised to re-check the law, too, and produce the requested discovery material if he found any support. He also invited a narrower discovery request. *Id.*

Neither lawyer communicated any further about that prior to the Rule 30(b)(6) deposition. Doc. 41-3 ¶ 7. Neither now claim that they found any authority to alter their positions by that point; nor did either move this Court for relief prior to the deposition.[3] Doc. 41-3 ¶ 6. Therefore, HKI now asserts, it reasonably believed that this issue had been resolved prior to that deposition. *Id.* And after that deposition -- where Cheri S. Keller was asked about the disputed information but counsel instructed her not to answer, doc. 40-5 at 2-5[4] -- the lawyers

---

[3] HKI could have moved for a protective order. *See, e.g., U.S. ex rel. St. Joseph's Hosp., Inc. v. United Distributors, Inc.*, 2012 WL 5511729 at * 5 (S.D. Ga. Nov. 14, 2012) (granting partial relief to protective-order movant), and Coach could have filed a motion to compel then (i.e., before the deposition).

[4] Coach specifically cites this passage:

Q. For 2011, what were the revenues of the flea market?

again met in preparing for the Status Report (doc. 35) that they later filed. Doc. 41-3 ¶ 7. The same contentions were made there but no one cited any new authority. Coach then filed this motion to compel. *Id.*

## II. ANALYSIS

### A. Certification

HKI insists Coach did not make enough of an effort to comply with local and federal rule requirements that the parties confer and make a good faith effort to resolve their dispute before involving the court.[5] Doc. 41 at 14-18. Just as "there is "no magic formula" for determining whether a particular government action constitutes a taking of property, *Arkansas Game and Fish Com'n v. United States*, \_\_ U.S. \_\_, 133 S.Ct. 511, 518 (2012), likewise there is none for assessing good faith here. The parties did confer directly on this matter but disagreed over the law's reach.

---

MR. BAIAD: I'm going to object to the form of the question and instruct the witness not to answer on the grounds that the request is not reasonably calculated to lead to the discovery of admissible evidence. And Ms. Keller, do not answer that question.

Doc. 40-5 at 2-3; doc. 40-1 at 3-4 n. 2.

[5] The duty to confer is mandatory and must be meaningful. *Scruggs v. International Paper Co.*, 2012 WL 1899405 at *1 (S.D. Ga. May 24, 2012).

6

HKI basically complains that Coach failed to cite sufficient authority to defeat its legal justification for non-disclosure. Doc. 41 at 14. Coach cited authority, just not enough to satisfy HKI. But HKI is not invoking Fed. R. Civ. P. 11 against Coach now, which shows that HKI does not view Coach's disagreement as frivolous, just unsupported. Absent some sort of bad faith showing (i.e., that Coach knew or reasonably should have known that it didn't have a legal leg to stand on), Coach did enough here. This argument therefore fails.

### B. Fed. R. Civ. P. 26 Standards

Rule 26 of the Federal Rules of Civil Procedure provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense. . . ." Fed. R. Civ. P. 26(b)(1). "Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id*. There is no dispute that tax returns and private financial data enjoy some protection, and most courts require a clear and compelling showing to justify disclosure.[6]

---

[6] *See, e.g., Columbus Drywall & Insulation, Inc. v. Masco Corp.*, 2006 WL 5157686 at * 7 (N.D. Ga. May 31, 2006) ("In general, most courts have noted that public policy concerns favor keeping tax returns confidential when possible, and have ordered

The crux of the instant discovery dispute is whether Coach's discovery quest goes too far by demanding sensitive financial data to ultimately prove ill-gotten profits damages. As further discussed below, trademark and copyright victims may sue both direct infringers and, as alleged here, *contributory* infringers.[7] And if they may also pursue statutory or actual (wrongful profits) damages from them, then how is that done? Because if there is no way too prove actual, profit-based damages from a contributory infringer, then it is reasonable to prevent

---

production only when the relevance of the information is clear and there is a compelling need."); *Camp v. Correctional Medical Services*, 2009 WL 424723 at * 2 (M.D. Ala. Feb. 17, 2009) (applying a two-prong test: (1) find that the returns are relevant to the subject matter of the action; and (2) there is a compelling need for the returns because the information contained therein is not otherwise readily obtainable); *Water Out Drying Corp. v. Allen*, 2006 WL 1642215 at * 1 (W.D.N.C. June 7, 2006) ("Disclosure of tax returns is disfavored and courts should exercise great caution in ordering disclosure of tax returns.").

[7] *Hard Rock Cafe Licensing Corp. v. Concession Servs., Inc.*, 955 F.2d 1143, 1152 (7th Cir. 1992) (holding flea marketer landlord liable for contributory infringement for sales of counterfeit goods on premises, but only where landlord knowingly permitted such sales or was willfully blind); *Louis Vuitton S.A. v. Lee*, 875 F.2d 584, 590 (7th Cir. 1989); *Coach, Inc. v. Farmers Market & Auction*, 2012 WL 3195132 at *11 (D. Md. Aug. 7, 2012) (claim of contributory copyright infringement stated against flea market and its owner); *Coach, Inc v. Gata Corp.*, 2011 WL 1582954 at * 3 (D.N.H. Apr. 26, 2011) ("There is no logical reason why the doctrine of contributory infringement should not apply to a claim under the federal antidilution law.").

discovery efforts on that score.[8] Hence, it is necessary to explore briefly the operational dynamics of infringement damages.

## C. Damages

The Court will start with direct infringement damages principles because they inform contributory infringement cases. Where the trademark infringement action against a direct infringer involves

> the use of counterfeit marks in connection with a sale, offering for sale, or distribution of goods, 15 U.S.C. § 1117(c) provides that a plaintiff may elect an award of statutory damages at any time before final judgment is rendered in the sum of not less than $1,000.00 and not more than $200,000.00 per counterfeit mark per type of good. In addition, if the Court finds that Defendant's counterfeiting actions were willful, it may impose damages above the maximum limit up to $2,000,000.00 per mark per type of good. 15 U.S.C. § 1117(c)(2).

*Rolex Watch U.S.A., Inc. v. Lizaso-Rodriguez*, 2012 WL 1189768 at * 3 (S.D. Fla. Apr. 9, 2012). To that end, "Congress enacted a statutory damages remedy in trademark counterfeiting cases, because evidence of a

---

[8] Liability without proof of damages, of course, supports no recoverable claim. *Blackford v. Wal-Mart Stores, Inc.*, 912 F. Supp. 537, 539 (S.D. Ga. 1996); *cf., Worldwide Primates, Inc. v. McGreal*, 26 F.3d 1089 (11th Cir. 1994) (imposing Rule 11 sanctions against plaintiff who resisted dismissal motion notwithstanding fact that it could show no damages even if liability existed). Courts, meanwhile, may block discovery on nonviability grounds. *Smith v. United States*, 877 F.2d 40, 41 (11th Cir. 1989) (widow of a space shuttle astronaut killed in Challenger explosion was not entitled to discovery against the United States because her negligence action was barred as a matter of law); *Great Dane Ltd. Partnership v. Rockwood Service Corp.*, 2011 WL 2312533 at * 4 (S.D. Ga. Jun. 8, 2011).

9

defendant's profits in such cases *is almost impossible* to ascertain. *See e.g.*, S. Rep. No. 104-177, pt. V(7) (1995) (discussing purposes of Lanham Act statutory damages.)." *Id.* (emphasis added). The *Rolex* court awarded statutory damages against a defaulting (no discovery conducted) defendant. *Id.*

Where a plaintiff wants to recover ill-gotten profits, it must establish the direct infringer's gross sales of the product. That defendant then must refute that amount and/or proffer costs that should be deducted from the gross sales. *Wesco Mfg., Inc. v. Tropical Attractions of Palm Beach, Inc.*, 833 F.2d 1484, 1488 (11th Cir. 1987). Hence, "'[i]n assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed.' 15 USC § 1117(a)." *Tiramisu Intern. LLC v. Clever Imports LLC.*, 741 F. Supp. 2d 1279, 1290 (S.D. Fla. 2010).

Also, "[i]f a defendant shows that its sales were unrelated to the infringement, then the plaintiff is not entitled to recovery of those profits." *Flowers Bakeries Brands, Inc. v. Interstate Bakeries Corp.*, 2010 WL 2662720 at * 12 (N.D. Ga. June 30, 2010). So, there is some sifting and sorting that must be done if a plaintiff elects not to pursue statutory

trademark infringement remedies. Sales, however, are the prime factor here. *Drywall Systems Int'l, Inc. v. Polyform, Inc.*, 2005 WL 758257 at *2 (D. Or. Mar. 31, 2005) ("To obtain recovery of defendants' profits, plaintiff must prove defendants' sales. 15 U.S.C. § 1117. The court does not expect that a company's financial statements and tax returns would contain evidence of sales of products sold using certain marks, or that the information would be sufficiently specific to be relevant to plaintiff's calculation of damages.").

Copyright infringement plaintiffs are availed similar remedies:

> In general, a successful copyright plaintiff may elect between two monetary remedies. The first option is recovery of "the actual damages suffered by him or her as a result of the infringement, and any profits of the infringer that are attributable to the infringement." 17 U.S.C. § 504(b). In lieu of actual damages and profits, the copyright owner may elect to recover the second option, "an award of statutory damages ... in a sum of not less than $750 or more than $30,000 as the court considers just." 17 U.S.C. § 504(c)(1).

*Microsoft Corp. v. Tech. Enter., LLC*, 805 F. Supp. 2d 1330, 1332 (S.D. Fla. 2011). And similarly,

> [i]n establishing the infringer's profits, "the copyright owner is required to present proof only of the infringer's gross revenue, and the infringer is required to prove his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work." 17 U.S.C. § 504(b). The copyright plaintiff must allege a causal connection between the infringement and the profits

11

claimed, and may not "seek gross revenues based entirely on a speculative connection to the plaintiff's claim." *Fodere v. Lorenzo*, 2011 WL 465468 at *2 (S.D. Fla., Feb. 04, 2011).

*Id.* at 1333; *see also Caffey v. Cook*, 409 F.Supp.2d 484, 506-07 (S.D.N.Y. 2006) (three tenors, found to have nonwillfully infringed copyright on order of presentation of numbers in six public performances, could offset income taxes from gross profits from performances, in determining profit damages under 17 U.S.C. § 504(b)).

The case law generally shows, then, that "[i]f General Motors were to steal your copyright and put it in a sales brochure, you could not just put a copy of General Motors' corporate income tax return in the record and rest your case for an award of infringer's profits. *Taylor v. Meirick*, 712 F.2d 1112, 1122 (7th Cir. 1983)." Doc. 41 at 12. Put another way, claimants must use a method to sort and sift wrongful profit from underlying costs and unrelated sales. *Nike*, 274 F. Supp. 2d at 1372-73.

Here Coach pursues HKI only as a *contributory* infringer. Doc. 22. But what method will Coach use to collect non-statutory (sales-based profits) damages from HKI? It fails to say. It does correctly point out that flea marketers can contribute to such infringement by facilitating (supplying a vendor stall and looking the other way) the sale of

counterfeit goods. It also reasons that, in the discovery stage, it must be free to pursue information on contributory infringement damages even if ultimately it cannot prove same at trial -- and it need not elect which form of damages it wants now. And, since HKI has admitted it has no electronic accounting data, the only source of its profits is likely to be its tax returns. Doc. 46 at 2-3.

As the plaintiff it is Coach's burden to show how it can recover for actionable wrongs committed. It fails to show how it can recover profit-based damages, and thus how HKI's tax returns will yield it information to that end. All it does do is remind that for contributory infringement trademark it can elect actual or statutory damages. Doc. 40-1 at 7 (citing *Louis Vuitton Malletier, S.A. v. Akanoc Solutions, Inc.*, 658 F.3d 936, 945 (9th Cir. 2011)). Coach may be right in stating that infringement plaintiffs may elect between the two forms of damages, but it has yet to explain *how* that is realistically done in a case like this, much less how HKI's tax returns will assist Coach in proving actual (sales/profit-based) damages. No doubt a lax flea market over time can attract more and more counterfeiting vendors and thus more rental fees. But sifting the flecks of "counterfeit income" from the rental stream would be, on its

face, at best a speculative mirage. Coach is thus left with this question: How can it possibly prove anything but statutory damages (i.e., a profit-based form of damages) even if it is armed with the knowledge that HKI, for example, took in $500,000 of rental income and claimed a $100,000 profit? Again, even a direct-infringement plaintiff must initially prove an infringing defendant's sales before the burden shifts to the defendant to prove deductible costs. Coach can't even do that here, because the only thing HKI sold is rental space. Coach's *direct* infringer cases are easily distinguishable.

As noted earlier, Congress contemplated the probability of this situation by authorizing statutory damages. Coach is free to invoke that option. Otherwise, it is not entitled to HKI's tax returns and financials on these grounds. *See Drywall Systems,* 2005 WL 758257 at * 2.

Coach also seeks "actual and punitive damages to which it is entitled under applicable federal and state laws. . . ." Doc. 22 at 34. "[E]nhanced damages in trademark cases and in cases involving unfair and deceptive trade practices are three times the damages award. *See* 15 U.S.C. § 1117(b)." *Allen,* 2006 WL 1642215 at * 1. An enhanced award may be obtained without proving net worth or analyzing profits, so tax

returns are not needed for that. *Id.*; *see also Alaven Consumer Healthcare, Inc. v. DrFloras, LLC*, 2010 WL 481205 at * 5 (N.D. Ga. Feb. 4, 2010) (punitive damages are not available under the Lanham Act, 15 U.S.C. § 1117(a)); *Calio v. Sofa Express, Inc.*, 368 F. Supp. 2d 1290, 1291 (M.D. Fla. 2005) (punitive damages are not available remedy in statutory copyright infringement action). Coach is not entitled to HKI's financial data on federal "punitive damages" grounds.

Even if Georgia law can be invoked to support Coach's punitive damages claim, Coach has failed to meet the requirement for ordering the production of HKI's financials now. *See Merritt v. Marlin Outdoor Adver., Ltd.*, 298 Ga. App. 87, 92 (2009) (punitive damages may be awarded in tort actions in which the plaintiff proves by clear and convincing evidence that the defendant's actions demonstrated fraud that would raise the presumption of conscious indifference to consequences; since plaintiff failed to meet this standard, trial court properly denied plaintiff's discovery quest for defendant's net worth); *Smith v. Morris, Manning & Martin, LLP*, 293 Ga. App. 153, 168-69 (2008) (plaintiff is not entitled to discover information concerning defendant's personal financial resources absent an evidentiary showing

by affidavit, discovery responses, or otherwise that a factual basis exists for plaintiff's punitive damages claim); GEORGIA PROCEDURE DISCOVERY § 1:32 (2012). Coach has not even acknowledged these requirements, let alone tried to meet them.

### D. Deposition Instruction

Coach seeks sanctions against HKI for its counsel's instruction to Cheri Keller "not to answer" deposition questions based on *irrelevancy*, as opposed to privilege. Doc. 46 at 6-7; doc. 40-1 at 8-9. Coach cites case law showcasing the general rule supporting its position, though it is not hard to think of a compelling exception (e.g., to block harassingly irrelevant questions like "When did you stop beating your wife?"). Coach is otherwise correct that generally all blocking except as to privilege must be pre-authorized by way of a motion for protective order or (less preferably) by stopping a deposition to seek a ruling:[9]

> [Fed. R. Civ. P.] 30(d)(3)(A) provides that a deponent may move to terminate a deposition if "it is being conducted in bad faith or in a manner that unreasonably annoys, embarrasses, or oppresses the deponent." The burden of proving such conduct lies with the objecting deponent. 7-30 JEFFREY W. STEMPEL, MOORE'S FEDERAL PRACTICE–CIVIL § 30.51 (2009). The irrelevancy of a question is not grounds to instruct a witness not to answer the question, unless

---

[9] The latter option is not preferred. "Phoning it in" contemplates on-the-spot rulings that necessarily offer no time for contemplation or legal research.

and until the nature of the questioning makes it obvious that it is necessary to stop the deposition and seek relief under Rule 30(d)(3) for being conducted in a manner evidencing bad faith, or to embarrass, annoy, or oppress the deponent. *In re Stratosphere Corp. Sec. Litig.*, 182 F.R.D. 614, 619 (D.Nev.1998); *see* Rule 30(d). Notably, it is not the embarrassment or annoyance caused by unfavorable answers that is the controlling criterion under 30(d)(3), but the manner in which the interrogation is conducted that is the basis for refusing to proceed, followed by the required motion to seek relief. *In re Stratosphere*, 182 F.R.D. at 619. Likewise, the mere fact that more than one, or even that a series of irrelevant questions is asked does not, by itself, constitute the annoyance or oppression contemplated by (30)(d)(3). *Id.*

*Rivera v. Berg Elec. Corp.*, 2010 WL 3002000 at * 2 (D. Nev. July 28, 2010). There are unique circumstances in this case, most especially the earnest effort to "go by the book" *before* this deposition and the failure of either side to turn up any authority on the issue. Plus there is no suggestion that any unprofessional obstructionism occurred here. In light of those circumstances, the Court declines to sanction HKI on these grounds, and the same reasoning supports denial of Rule 37 sanctions -- the parties shall bear their own costs given the dearth of precedent here.

## III. CONCLUSION

Plaintiffs' motion to compel (doc. 40) is **DENIED**.

**SO ORDERED** this 17th day of December, 2012.

UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA

17